UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

DIEDRA WARREN, BRIAN THOMPSON, and )
CHARLIE KEY, *on their own behalves and on* )
*behalf of a class of those similarly situated*, )
)     No. 1:13-cv-1049-JMS-DKL
*Plaintiffs*, )
)
*vs.* )
)
TOWN OF SPEEDWAY and JOSEPH P. KRAMER, )
*member of the Speedway Police Department,* )
*in his individual capacity*, )
)
*Defendants*. )

## ORDER

Presently pending before the Court in this putative class action is Plaintiffs' Second Amended Motion for Class Certification.  [Dkt. 46.]

## I.
### STANDARD OF REVIEW

In deciding whether to certify a class, the Court may not blithely accept as true even the most well-pleaded allegations of the complaint, but must instead "make whatever factual and legal inquiries are necessary under Rule 23" to resolve contested issues.  *Szabo v. Bridgeport Machs., Inc*., 249 F.3d 672, 676 (7th Cir. 2001).  Specifically, the Court must find that the putative class satisfies the four prerequisites set forth in Federal Rule of Civil Procedure 23(a).  If the putative class does satisfy these prerequisites, the Court must additionally find that it satisfies the requirements set forth in Federal Rule of Civil Procedure 23(b), which vary depending upon which of three different types of classes is proposed.

It is the plaintiff's burden to prove first that an identifiable class exists that merits certification under Rule 23(a).  *Oshana v. Coca-Cola Co.,* 472 F.3d 506, 513 (7th Cir. 2006).  The four

prerequisites under Rule 23(a) are: "(1) [that] the class is so numerous that joinder of all members is impracticable; (2) [that] there are questions of law or fact common to the class; (3) [that] the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) [that] the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a).  Class certification is not appropriate unless the named plaintiff establishes all four prerequisites.  *Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 156 (1982).

In addition to meeting the prerequisites of Rule 23(a), the proposed class must satisfy one of the conditions of Rule 23(b).  *Oshana*, 472 F.3d at 513; *Williams v. Chartwell Fin. Servs*, 204 F.3d 748, 760 (7th Cir. 2000).  Under Rule 23(b), a class action that satisfies Rule 23(a) may be sustained if one of the following is true: "(1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests; (2) the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole; or (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(1-3).  Matters pertinent to a Rule 23(b)(3) determination include: "(A) the class members' interests in individually controlling the prosecution or defense of separate

actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3)(A-D).

## II.
### BACKGROUND

Plaintiffs Diedra Warren, Brian Thompson, and Charlie Key are all taxi drivers who were driving their taxis in the Town of Speedway, Indiana ("Speedway") on May 26, 2013.   [Dkt. 44 at 6-8, ¶¶ 43, 46, 56, 59, 68, 71.]  May 26, 2013 was the day of the Indianapolis 500, and hundreds of thousands of people came to Speedway for the event.  [*Id.* at 1, ¶ 1; 5, ¶¶ 30, 32.]  Due to the influx of visitors, many taxi drivers, including Plaintiffs, were transporting people to and from the race.  [*Id.* at 5, ¶ 36.]  The Indianapolis Metropolitan Police Department ("IMPD") and the Speedway Police Department ("SPD") had an increased presence on race day, and many streets in Speedway were closed to facilitate the traffic flow.  [*Id.* at 5, ¶¶ 37, 40.]  Main Street in Speedway, however, remained open.  [*Id.* at 5, ¶ 39.]

Plaintiffs allege that, on race day, IMPD officers directed taxi drivers to drop their passengers off on Main Street, [*id.* at 6, ¶ 41], and that many passengers then made plans to be picked up at the same spot on Main Street after the race. [*id.* at 6, ¶ 42].  Ms. Warren and Mr. Key allege that, upon returning to Speedway to pick up passengers after the race, an IMPD officer directed them onto Main Street to do so.  [*Id.* at 6, ¶ 48; 8, ¶ 71.]  Once back on Main Street to pick up passengers, all three Plaintiffs allege that Defendant Joseph Kramer, an SPD Officer, and/or Officer Jennie McShane of the Indiana University (Bloomington) Police Department who was acting under Officer Kramer's direction, approached them and seized their taxi operator licenses.  [*Id.* at 6, ¶ 50; 7, ¶ 61; 9, ¶ 75.]  Ms. Warren and Mr. Thompson also allege that Officer

Kramer and/or Officer McShane threatened to arrest them if they did not leave.  [*Id.* at 6, ¶ 50; 8, ¶ 62.]  Plaintiffs allege that they saw other taxi cab drivers on Main Street having their operator licenses seized by Officer Kramer and Officer McShane.  [*Id.* at 9, ¶ 80.]

When Ms. Warren called the SPD later on race day, she was told she could pick up her operator license two days later, on May 28.  [*Id.* at 7, ¶ 51.]  Ms. Warren and Mr. Key picked their licenses up on the 28th from the SPD, and both received parking tickets when they did so. [*Id.* at 7, ¶¶ 53-54; 9, ¶¶ 77-78.]  Mr. Thompson picked his license up on May 29, and also received a parking ticket from the SPD.  [*Id.* at 8, ¶¶ 65-66.]

Plaintiffs filed a Class Action Complaint for Damages on July 1, 2013, alleging that the seizure of their operator licenses violated the Fourth and Fourteenth Amendments to the United States Constitution, and that they have suffered damages as a result of the seizures.  [Dkt. 1 at 9-10.]  They filed a First Amended Complaint on October 17, 2013, which added a conversion claim.  [Dkt. 25.]  Plaintiffs then filed a Second Amended Complaint on December 2, 2013, which added Officer Kramer as a defendant.  [Dkt. 44.]  The Second Amended Complaint is now the operative complaint.  Through the currently pending motion, Plaintiffs seek certification of a class of "all licensed taxi operators whose taxi operator licenses were seized by Speedway employees on May 26, 2013."  [Dkts. 7 at 1; 46.][1]

---

[1] The amendments to the initial complaint, followed by amended motions for class certification, have made the briefing of the class certification issue somewhat disjointed.  In ruling on the Second Amended Motion for Class Certification, the Court has considered – at the direction of the parties – their initial briefs and any supplemental briefs or reports that they have submitted.  [*See* dkts. 8; 19; 20; 21; 26; 31; 35; 46; 55.]

# III.
## DISCUSSION

### A. Federal Rule of Civil Procedure 23(a)

#### 1. Numerosity

Plaintiffs allege that Rule 23(a)'s numerosity requirement is met because Speedway has admitted that two SPD officers seized at least forty taxi operator licenses on race day. [Dkts. 31 at 3; 31-1 at 1 (Speedway "admits that the two police officers involved confiscated at least 40 taxi operator licenses").][2]

To satisfy the numerosity requirement, a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). This case-by-case analysis involves factors such as "class size, ease of identifying members, geographic dispersion of members,…the magnitude of individual claims[,]…'judicial economy, and the ability of class members to institute individual suits.'" *Estate of Vandam v. Daniels*, 278 F.R.D. 415, 423 (S.D. Ind. 2011) (citing *Young v. Magnequench Int'l, Inc.*, 188 F.R.D. 504, 506 (S.D. Ind. 1999) and quoting *Schmitt v. United States*, 203 F.R.D. 387, 401 (S.D. Ind. 2001)). The Court is "entitled to make 'common sense assumptions in order to find support for numerosity.'" *Cox v. Sherman Capital LLC,* 2013 U.S. Dist. LEXIS 112625, *19 (S.D. Ind. 2013) (citing *Nat'l Org. For Women, Inc. v. Scheidler,* 172 F.R.D. 351, 359 (N.D. Ill. 1997)).

The Court agrees that a class size of at least forty members would make joinder of the parties impracticable and is sufficient to satisfy Rule 23(a)(1). *See, e.g., Flood v. Dominguez,*

---

[2] Plaintiffs originally argued that a police dispatcher told Ms. Warren that the SPD seized eighty taxi operator licenses on race day, [dkts. 8 at 2-4; 8-1 at 2, ¶ 15]. But they supplemented their numerosity argument after receiving Speedway's Responses to Requests for Admission wherein Speedway admitted that at least forty licenses were seized. Accordingly, Plaintiffs' arguments regarding the police dispatcher's statement that eighty licenses were seized, and Speedway's responses to those arguments, are now moot.

270 F.R.D. 413, 417 (N.D. Ind. 2010) ("Generally speaking, when the putative class consists of more than 40 members, numerosity is met, but there is nothing magical about that number"). Speedway has admitted that at least forty licenses were seized on race day and, accordingly, Plaintiffs have met their burden of proof regarding the numerosity requirement.

  2. *Commonality*

  Plaintiffs argue that commonality is satisfied because all of the class members were subject to the same course of conduct – that their taxi operator licenses were seized on the same day, on the same street, by the same entity, in violation of their Fourth and Fourteenth Amendment rights.  [Dkt. 8 at 4-5.]  They assert that common questions of law include whether Defendants had a legal basis to seize the operator licenses and whether they provided any process to the proposed class members.  [*Id.*]  They also argue that a claim for conversion is proper for class certification when it is based on uniform actions by a defendant.  [Dkt. 31 at 2.]  Defendants, however, argue that the commonality element cannot be satisfied because whether the officers that interacted with each class member had probable cause to seize the operator license, and what direction each class member received from officers or otherwise regarding driving on Main Street, will vary among class members.  [Dkt. 19 at 5.]  Plaintiffs reply that the issues Defendants have identified are irrelevant to whether Defendants are liable under the Fourth and Fourteenth Amendments.  [Dkt. 20 at 3-4.]

  Under Rule 23(a)(2), some "factual variation among the class grievances" does not defeat class certification.  *In re FedEx Ground Package Sys., Empl. Practices Litig.,* 273 F.R.D. 424, 435 (N.D. Ind. 2008); *see also Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992); *Walker v. Calusa Inv., LLC,* 244 F.R.D. 502, 507 (S.D. Ind. 2007) ("[T]he commonality requirement does not require that every putative class member have every issue of fact and law in common").

Particularly appropriate for class treatment are claims "arising from a defendant's standardized conduct towards members of the proposed class." *In re FedEx*, 273 F.R.D. at 435.  Plaintiffs must show that their claims depend on a "common contention of such a nature that it is capable of classwide resolution — which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc., v. Dukes,* 131 S.Ct. 2541, 2545 (2011).  Here, the class members have in common numerous questions of law and fact, including the circumstances surrounding the seizure of their operator licenses, and whether those seizures violated their rights and constituted conversion.  The class members' accounts do not have to mirror one another for common questions of law or fact to exist.  The Court finds that the commonality requirement has been satisfied.

### 3.  Typicality

Plaintiffs assert that typicality is met because the named Plaintiffs "seek a declaration that the actions of the defendants were unlawful and seek damages on their own behalf and on behalf of all class members," and "there are no unique problems precluding the named plaintiffs from pursuing their claims."  [Dkt. 8 at 5.]  Additionally, Plaintiffs argue that the class members' claims arise from the same "event, practice, or course of conduct… [and] are based on the same legal theory."  [Dkt. 20 at 5.]  Defendants argue that typicality cannot be met because the circumstances surrounding each class member's claim are different and "substantial differences may require a review of each plaintiff's claim."  [Dkt. 19 at 5-6.]

Typicality and commonality are closely related.  *Rosario,* 963 F.2d at 1018.  Typicality requires that "claims… of the representative parties are typical of the claims… of the class."  Fed R. Civ. P. 23(a)(3).  However, like commonality, the typicality requirement may be satisfied even if there are factual differences between class member's claims, so long as those claims

"arise[] from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *De La Fuente v. Stokely-Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir. 1983*); see also Oshana,* 472 F.3d at 514 (typicality requirement "meant to ensure that the named representative's claims 'have the same essential characteristics as the claims of the class at large'") (citing *Retired Chi. Police Ass'n v. City of Chi.*, 7 F.3d 584, 597 (7th Cir. 1993)); *Olson v. Brown*, 284 F.R.D. 398, 410 (N.D. Ind. 2012). In other words, "there must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co.,* 633 F.3d 574, 586 (7th Cir. 2011). The named Plaintiffs' claims arise out of the same event or course of conduct as the class members' claims – *i.e.*, Defendants' seizure of their operator licenses on the same day, at the same location. Defendants do not cite to any specific, relevant differences to indicate that the named Plaintiffs' claims are not typical of those of the class. Accordingly, the Court finds that Plaintiffs have satisfied Rule 23(a)(3)'s typicality requirement.

### 4. *Adequacy of Representation*

Finally, Plaintiffs must show that the "representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Defendants concede that, in the event a class action is approved, the named Plaintiffs and their counsel would adequately represent the interests of the class, [dkt. 19 at 6], and the Court agrees and finds that Rule 23(a)(4)'s requirements are met.

### B. Federal Rule of Civil Procedure 23(b)

Having found that all prerequisites of Rule 23(a) have been met, the next inquiry is whether Rule 23(b) is satisfied. Plaintiffs bring their class claims under Rule 23(b)(3), which

provides that "questions of law or fact common to class members [must] predominate over any questions affecting only individual members, and…a class action [must be] superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  Rule 23(b)(3) lists four factors which are relevant to the predominance and superiority inquiry: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action."  Fed. R. Civ. P. 23(b)(3)(A-D).

### 1. Predominance

Plaintiffs assert that the proposed class fits within Rule 23(b)(3) because "[t]he common questions of fact and law here revolve around the uniform seizure of the taxi-operator licenses of the plaintiffs and the putative class," the factual circumstances are common to all class members, and "the seizures present the identical legal question – was this a lawful seizure."  [Dkt. 8 at 7.] Defendants argue that the predominance requirement cannot be satisfied because there are individualized questions relating to liability and damages.  [Dkt. 19 at 6-7.]  Specifically, as to damages Defendants assert that, since putative class members likely worked different shifts and earned different salaries on May 26, 2013, determining each individual's relief would necessitate unique damage calculations.  [*Id*. at 7.]

The Court finds that the fact that each class member may have suffered a different amount of damages is not problematic for class certification purposes, so long as "the issues of liability are genuinely common issues, and the damages of individual class members can be readily determined in individual hearings, in settlement negotiations, or by creation of subclasses…."

*Butler v. Sears, Roebuck & Co.*, 2013 U.S. App. LEXIS 17748, *13 (7th Cir. 2013); *see also Arreola v. Godinez*, 546 F.3d 788, 801 (7th Cir. 2008).  Here, damages can be easily determined for each class member, as "determination[s] of liability could be followed by [brief] hearings to determine the damages sustained by each class member," *Butler*, 2013 U.S. App. LEXIS 17748 at *5, and any differences in damages will not defeat class certification.  Additionally, issues of liability are common to the class, as all relate to the SPD officers' actions towards the class members.  Therefore, common issues affecting the class predominate over issues affecting individual class members.

### 2.  Superiority

As to the superiority element, Plaintiffs assert that a class action is the superior method for fairly and efficiently adjudicating this controversy because each class member's claim is relatively small and the cost of litigation might discourage the filing of individual claims.  [Dkts. 8 at 9; 20 at 8.]  Defendants argue that the issue of unequal damages prevents a class action from being the most fair and efficient means of adjudication.  [Dkt. 19 at 6-8.]

Defendants do not take issue with Plaintiffs' argument that individual class members do not have an interest in prosecuting separate actions, and also do not argue that there is any pending litigation regarding the controversy or that the forum is not a desirable one.  Instead, they argue only that differences in damages will make managing a class action difficult.  But, as discussed above, potential differences in damages does not preclude class certification here.  The Court finds that a class action is the superior method for adjudicating this controversy, especially in light of the relatively small damages requested by each class member, which would likely make individual members reluctant to file their own actions.  *Selburg v. Virtuoso Sourcing Group, LLC*, 2012 U.S. Dist. LEXIS 142653, *29-30 (S.D. Ind. 2012) (class action treatment

appropriate where "individual suits would be unlikely as [class members] may be hesitant to prosecute individual claims without the availability of the cost-sharing efficiencies of a class action," and individual recoveries would be relatively small).

Plaintiffs have met their burden of showing that both the predominance and superiority requirements of Rule 23(b)(3) have been satisfied.

## IV.
### CONCLUSION

The Court finds that this action qualifies for class action treatment because all of the prerequisites of Fed. R. Civ. P. 23(a) and the requirements of Fed. R. Civ. P. 23(b)(3) are satisfied. Accordingly, the Second Amended Motion for Class Certification, [dkt. 46], is **GRANTED**.

The Court now **CERTIFIES** the following class:

**All licensed taxi operators whose taxi operator licenses were seized by Speedway employees on May 26, 2013.**

Further, the Court **DESIGNATES** Plaintiffs Diedra Warren, Brian Thompson, and Charlie Key as the representative Plaintiffs and, pursuant to Fed. R. Civ. P. 23(g), **DESIGNATES** Lynn Toops and Richard Shevitz of Cohen & Malad LLP and Kenneth Falk of the ACLU of Indiana as lead class counsel.  The parties shall meet and confer regarding the form that proposed notice to the class should take. *See* Fed. R. Civ. P. 23(c)(2)(B).  The parties shall submit a joint report (and, if necessary, competing proposals) by **January 8, 2014** regarding the results of their meet-and-confer.

12/19/2013

_Jane Magnus-Stinson_
Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

- 11 -

**Distribution via ECF only:**

Kenneth J. Falk
ACLU OF INDIANA
kfalk@aclu-in.org

Ronald J. Semler
STEPHENSON MOROW & SEMLER
rsemler@stephlaw.com

Richard E. Shevitz
COHEN & MALAD LLP
rshevitz@cohenandmalad.com

James S. Stephenson
STEPHENSON MOROW & SEMLER
jstephenson@stephlaw.com

Lynn A. Toops
COHEN & MALAD LLP
ltoops@cohenandmalad.com